UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA EICHLIN, : | |
| Plaintiff, : | |
| : | |
| v. : | No. 5:24-cv-1502 |
| : | |
| GHK COMPANY, *d/b/a KELLY AUTOMOTIVE* : | |
| *GROUP, et al.*, : | |
| Defendants. : | |

**O P I N I O N**
**GHK Company's Motion to Stay Litigation and Compel Arbitration – ECF No. 15 – Granted**

**Joseph F. Leeson, Jr.** **August 26, 2024**
**United States District Judge**

### I. INTRODUCTION

A dispute has arisen out of the purchase and subsequent repossession of a vehicle. That purchase was memorialized in a buyer's order signed by Tina Eichlin and containing an arbitration provision. Pursuant to that provision, GHK Company (doing business as "Kelly Auto Group") seeks to compel arbitration.

### II. BACKGROUND

The factual allegations, taken from the Amended Complaint, *see* Am. Compl., ECF No. 12, are as follows:

Tina Eichlin bought a 2018 Jeep Compass from the Kelly Auto Group on September 15, 2023. *Id*. ¶ 11. When the Jeep began having mechanical problems, Eichlin returned the vehicle to Kelly Auto Group which gave her a Mitsubishi Outlander as an interim loaner vehicle. *Id*. ¶ 12. Because the Jeep continued to have mechanical problems, Eichlin decided to purchase the

Mitsubishi. *Id*. ¶ 13. The sale was memorialized in a two-page buyer's order, prepared by Kelly Auto Group and containing the following (relevant) clauses:

> Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Mot., ECF No. 15, Ex. A. The back of the form reads, in part:

> ARBITRATION PROVISION
> PLEASE REVIEW – IMPORTANT – EFFECTS YOUR LEGAL RIGHTS
> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
> . . .
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action…

*Id*.

The buyer's order also listed the price of the vehicle as $25,335.88. Am. Compl. ¶ 15. Eichlin paid for the car with a combination of cash and trade-in value for her previous vehicle. *Id*. ¶ 16. The buyer's order also stated that, at the time of sale, there was an unpaid balance of $1,604.00. *Id*. ¶ 17. Eichlin paid that balance on September 20, 2023, the day the purchase was concluded. *Id*. ¶ 18. Weeks later, Kelly Auto Group reached out to Eichlin to explain to her that there was an "arithmetic error" and that Eichlin owed an additional $2,395 on the car. *Id*. ¶ 23. When Eichlin refused to pay, Kelly Auto Group retained Commonwealth Asset Recovery to repossess the car. *Id*. ¶ 30. Commonwealth Asset seized the vehicle on November 30, 2023. *Id*. ¶ 32.

Eichlin has now filed suit against Kelly Auto Group and Commonwealth Asset, bringing a host of claims arising out of the sale and repossession of the vehicle.  In Count I, Eichlin asserts a cause of action arising under Pennsylvania's Unfair Trade Practices and Consumer Protection Law against Kelly Auto Group.  In Count II, Eichlin asserts a claim for conversion/wrongful repossession against all defendants.  In Count III, Eichlin asserts a cause of action arising under the Fair Debt Collection Practices Act against Commonwealth Asset.  In Count IV, Eichlin asserts a cause of action arising under the Fair Credit Extension Uniformity Act against all defendants.

Before the Court is Kelly Auto Group's Motion to Stay Litigation and Compel Arbitration.  The matter is fully briefed and ready for disposition.  For the reasons that follow, the Motion is granted.

### III.   LEGAL STANDARDS

#### A.   Motion to Compel Arbitration – Review of Applicable Law

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

"However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Coulter v. Experian Info. Sols., Inc.*, No. 20-cv-1814, 2021 U.S. Dist. LEXIS 35175, at *9 (E.D. Pa. Feb. 25, 2021) (quoting *Henry Schein, Inc. v. Archer &*

*White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)); *see also MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 402 (3d Cir. 2020) ("[U]nder section [four] of the [Federal Arbitration Act], courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision."). Therefore, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.

Additionally, "unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co.*, 974 F.3d at 399 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, something akin to Russian nesting dolls.") (cleaned up).

In deciding whether to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56.  *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013).  If arbitrability is not apparent on the face of the complaint or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard."  *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted).  The summary judgment standard is also applied if the parties rely on factual evidence outside the pleadings in arguing that arbitration is or is not appropriate.  *See Smeck v. Comcast Cable Commc'ns Mgmt., LLC*, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

Here, because Kelly Auto Group has attached the arbitration agreement to its motion to compel and because Eichlin relies on no additional facts in disputing the motion, the Rule 12(b)(6) standard applies. *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. CV 19-2642-KSM, 2022 WL 407396 at *4 (E.D. Pa. Feb. 9, 2022).

### B.      Motion to Dismiss 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of proving that a plaintiff has

failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

IV.     ANALYSIS

Pursuant to aforementioned arbitration clauses, Kelly Auto Group seeks to compel arbitration. Eichlin objects, offering the following three arguments: 1) by choosing to repossess the vehicle, Kelly Auto Group waived any right to arbitrate; 2) Kelly Auto Group has failed to demonstrate the formation of a valid agreement; and 3) the agreement is unconscionable.

At the outset, the Court finds it useful to categorize the nature of Eichlin's challenges. The first argument (that Kelly Auto Group waived arbitration) and third argument (that the agreement is unconscionable) regard the *enforceability* of the contract and not its formation. *See Iezzi v. CrossCountry Mortg., LLC*, No. 23-2827, 2024 WL 37951, at *5 (E.D. Pa. Jan. 3, 2024) ("A party raises an enforceability challenge when they do not dispute a contract exists, but they argue we should not enforce the contract based on contract defenses including duress, frustration of purpose, or *unconscionability*") (emphasis added). In contrast, Eichlin's argument that the arbitration agreement (as a whole) lacks mutual assent goes to formation and must be decided by the Court. *See Carrone v. UnitedHealth Grp. Inc*, No. 20-2742, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021).

This distinction is critical because a challenge to the enforceability of the contract does not dispute whether a contract was formed but instead whether a party can "avoid the contract's legal effect." *Mack v. Progressive Corp.*, No. 23-2430, 2024 WL 1120377, at *5 (E.D. Pa. Mar. 14, 2024); *see also Loyko v. Old Orchard Health Care Ctr.-Easton, PA, LLC*, No. 5:24-cv-0360, 2024 WL 1096813 at *5 (E.D. Pa. Mar. 13, 2024) (distinguishing formation challenges from

enforceability challenges.)  This distinction, in conjunction with the delegation clause, determines the scope of what this Court may review.  The Court turns to that issue now.

      **A.**      **Delegation Clause**

The arbitration provision at issue contains a delegation clause.  It provides that "[a]ny claim or dispute . . . (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . shall, at your or our election, be resolved by neutral, binding arbitration."  *See Singh v. Uber Techs. Inc*., 939 F.3d 210, 215 (3d Cir. 2019) (reasoning that a delegation clause is one which "reserves arbitrability questions for an arbitrator to decide.")  The Arbitration Provision also states that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration."  Mot., Ex. A. at 1.  It is further undisputed that the agreement containing the arbitration clause was signed by Eichlin and a representative of Kelly Auto Group.  Thus, the Court finds that the parties made a clear and unmistakable agreement to delegate issues of arbitrability to the arbitrator.  *See Coulter*, 2021 WL 735726, at *5 (holding that the Court could not consider the defendant's waiver argument where the delegation clause at issue reserved any dispute as to the "scope and enforceability" of the arbitration provision to the arbitrator).

It is also clear that Eichlin has not challenged the delegation clause itself.  Rather, the thrusts of her arguments are aimed at the enforceability or formation of the arbitration provision *as a whole*.  Accordingly, without a specific challenge to the delegation clause, "this Court is required to treat the provision as valid and enforce it pursuant to section four of the Federal Arbitration Act."  *Stanford v. Azzur Grp., LLC*, No. 5:23-cv-03017, 2024 WL 921027, at *4 (E.D. Pa. Mar. 4, 2024); *see also Steinberg v. Capgemini Am., Inc*., No. 22-489, 2022 U.S. Dist.

LEXIS 146014, at *8 (E.D. Pa. Aug. 15, 2022) (holding that the plaintiff's "unconscionability objections should be resolved by the arbitrators" where the plaintiff had "failed to challenge the delegation provision specifically").

### B. Mutual Assent

That does not end the matter because Eichlin's second argument claims the arbitration agreement lacked mutual assent. A claim that the arbitration provision lacked mutual assent would "necessarily put[] the existence of the arbitration agreement at issue," including the delegation clause. *Carrone*, 2021 WL 3520809, at *1. In determining whether a contract was formed, the Court applies Pennsylvania law. *Kirleis*, 560 F.3d at 160. "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Id*.

The Court has little trouble concluding that a valid agreement to arbitrate was formed. The terms of the agreement are sufficiently definite enough to be enforced. *See Soroko v. ATMOS, Inc.*, No. 11-6120, 2015 U.S. Dist. LEXIS 127317, at *16 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced because, *inter alia*, there was a certain basis for a court to provide a remedy under the arbitration provisions). There is also adequate consideration. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").

Here, Eichlin's sole challenge is to the first element and is entirely premised on *Chilutti v. Uber Techs., Inc.*, 300 A.3d 430 (Pa. Super. 2023). In essence, Eichlin argues that the agreement was not forthcoming as to the *constitutional* nature of the right to trial she waived by

agreeing to arbitrate. Thus, there was no mutual manifestation of intent or assent to be bound by the agreement where she did not *knowingly* waive her constitutional right to a jury trial.

Having reviewed the case, the Court finds that *Chilutti* does not undermine the mutual assent of the instant arbitration agreement. In that case, Shannon Chilutti was injured while riding in an Uber carpool. *Id*. at 434. When she and her husband filed a negligence suit against Uber and its subsidiaries, the defendants moved to compel arbitration, arguing that "the couple's conduct on the company's website and application — when they registered for the ridesharing service — signified that they agreed to be bound by the mandatory arbitration provision found in the hyperlinked terms and conditions." *Id*. Sitting *en banc*, the *Chilutti* Court reversed the trial court order compelling arbitration, reasoning that "[the plaintiffs] demonstrated there was a lack of a valid agreement to arbitrate, and therefore, they [were] entitled to invoke their constitutional right to a jury trial." *Id*. at 451

The *Chilutti* Court wrote with concern as to the ubiquity of arbitration provisions in modern contracts and the weakening effect this practice has had on the constitutional right to a jury trial in civil proceedings. *Id*. at 441. This practice is of particular concern to the Superior Court in the context of internet contracts wherein a binding arbitration agreement:

> (1) can be inconspicuous; (2) may be contained in a hyperlink that is separate from the binding action like a "click" of an "I agree to these terms" button; (3) may not require a party's signature to be in direct relation to the waiver; and (4) may not require that a party even review the agreement to be bound by it.

*Id*. at 442. Out of this concern, the *Chilutti* Court drew a series of principles. It reasoned that "a court should not enforce an arbitration provision in an *Internet* purchase agreement unless the court finds that the party agreeing to an arbitration provision was aware that they were waiving the right" and that a waiver ought to be "clearly described and understood to be giving up a constitutional right to a jury trial." *Id*. at 442-43 (emphasis added).

The *Chilutti* Court is hardly the first to espouse such concerns. Indeed, the Court's opinion cites a Ninth Circuit opinion contrasting clickwrap[1] agreements from browsewrap[2] agreements and outlining how that distinction relates to the manifestation of assent. *Id*. at 443-44. Ultimately, the *Chilutti* Court held that "Uber's website and application did not provide reasonably conspicuous notice of the terms to which Appellants were bound" where "the 'terms and conditions' agreement was encapsulated in tiny, blue font at the very bottom of a cluttered webpage. The relevant text was not underlined or capitalized." *Id*. at 449. Further, other terms and conditions could only be reviewed in small font and long after the registration process began. *Id*.

The Court provided that a similarly situated agreement would demonstrate an unambiguous manifestation of assent to arbitration by comporting with the following:

> (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's "terms and conditions," and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text.

*Id.* at 450. The Court finds that *Chilutti* has no import on the instant case because the decision in *Chilutti* is framed in the context of lengthy and hidden browsewrap agreements, not two-page written buyer's orders like the one at bar. *Id*. at 434 ("Central to this case is whether a party

---

[1] In a clickwrap agreement, "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed." *Chilutti v. Uber Techs., Inc.*, 300 A.3d 430, 443–44 (Pa. Super. 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022)). Because these agreements provide notice of the terms offered, they are routinely found to be enforceable. *Id*.

[2] In a browsewrap agreement, "a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id*. Given the lack of notice, "Courts are more reluctant to enforce browsewrap agreements." *Id.*

should be deprived of their constitutional right to a jury trial when they purportedly enter into an arbitration agreement *via* a set of *hyperlinked "terms and conditions" on a website or smartphone application* that they never clicked on, viewed, or read.") (emphasis added).

Here, the very first numbered paragraph under the Arbitration Provision states in all capital letters: "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION *AND NOT IN COURT OR BY JURY TRIAL*." Mot. at Ex. 1 (italics added). Eichlin's contention that the agreement was not forthcoming as to her waiver of the right to trial is therefore without merit. Additionally, immediately above the second of Eichlin's three signatures on the buyer's order is a clause stating that, "[b]y signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action." Mot. Ex. A at 1. Her signature affixed to this clause is sufficient to demonstrate her assent to be bound by the terms of the arbitration agreement.

Accordingly, because *Chilutti* does not apply, and because a valid arbitration agreement exists, the Court will compel arbitration.

  **C.**  **The action is stayed pending arbitration.**

Section 3 of the FAA requires that a court stay an action pending arbitration when a party has requested a stay. *See Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-CV-04580, 2018 U.S. Dist. LEXIS 145717 at *32-33 (E.D. Pa. Aug. 27, 2018). Accordingly, because Kelly Auto Group has requested a stay, and because the Court finds a stay with regard to the claims against Commonwealth Asset are appropriate given their factual overlap, the above-captioned action is stayed pending resolution of arbitration. *See Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 436 (E.D. Pa. 2016).

## V.     CONCLUSION

Because Eichlin failed to specifically challenge the delegation clause and because she has not shown the arbitration agreement lacked mutual assent, the Court is constrained to enforce the terms of the agreement and compel arbitration.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge